(October 31, 1921.)

## A. L. HOUGHTELIN, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[202 Pac. 571.]

RAILROAD STOCKYARDS—SUFFICIENCY OF—DUTY TO PROTECT SHEEP IN STOCKYARDS AGAINST ATTACK OF DOGS.

1. It is the duty of a railroad company to furnish suitable stockyards or pens in a reasonable state of repair and reasonably secure, whether they are to be used for the purpose of feeding, watering and resting livestock while being transported over its road, or are furnished for the reception of livestock intended to be shipped over its road.

2. The question as to whether stockyards provided by a railroad company are reasonably secure for sheep should be determined in view of the well-known fact that every city and village contains dogs, some of which are likely to attack sheep in pens if opportunity is afforded.

3. The duty rests upon a railroad to provide suitable stockyards for the reception and retention of livestock, independently of any conditions of the shipping contract.

4. The obligation of a shipper of livestock to discover defects in the yards in which he places his livestock for shipment over a railroad requires the exercise of only ordinary care.

5. The duty of a railroad company to furnish stockyards reasonably secure· is unqualified.

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action for damages. Judgment for plaintiff. *Affirmed.*

Geo. H. Smith and H. B. Thompson, for Appellant.

The obligation of the carrier with respect to the sufficiency of the pens was only that degree of care and diligence that a reasonably prudent man would, under all the circum-· stances, have exercised. (*Chicago, R. I. & P. R. Co. v.*

*Crenshaw* (Tex. Civ. App.), 126 S. W. 602; *Humphreys v. St. Louis & H. R. Co.*, 191 Mo. App. 710, 178 S. W. 233; 2 Hutchinson on Carriers, 3d ed., sec. 510; 4 R. C. L. 969.)

In the exercise of ordinary care, the railroad company is not, in the absence of notice that vicious dogs are in the vicinity and apt to molest sheep, bound to anticipate that dogs will so molest such sheep, and to make its fences dog-proof as well as stock-proof. (*Beckman v. Southern Pac. R. Co.*, 39 Utah, 472, 118 Pac. 118.)

Where the shipper assumes responsibility for stock while off cars, he alone is responsible for failure to reasonably and properly protect the same. (*Heller v. Chicago, G. R. T. R. Co.*, 109 Mich. 53, 63 Am. St. 541, and note, 66 N. W. 667; 4 R. C. L. 731; *St. Louis, I. M. & So. R. Co. v. Hudgins Produce Co.*, 118 Ark. 398, 177 S. W. 400; *Nunnelee v. St. Louis, I. M. & S. R. Co.*, 145 Mo. App. 17, 129 S. W. 762; *Curry v. Seaboard Air Line R. Co.*, 156 N. C. 432, 72 S. E. 493.)

Walters & Hodgin and Carl De Long, for Respondent.

"It is the duty of a carrier to furnish suitable and safe facilities and appliances for loading and unloading stock at their shipping stations and to use due care in keeping such pens and loading appliances in a reasonably safe condition." (4 R. C. L. 972; note to *St. Louis, S. F. R. R. Co. v. Beets,* 75 Kan. 295, 89 Pac. 683, 10 L. R. A., N. S., 571; note to *Norfolk & W. R. C. Co. v. Harman,* 91 Va. 601, 50 Am. St. 855, 22 S. E. 490, 44 L. R. A. 289.)

It is common knowledge that ordinary dogs not accustomed to sheep, upon coming in contact with sheep for the first time invariably chase, and sometimes kill them. "The court will take judicial notice of common knowledge." (15 R. C. L. 1102, and authorities.)

RICE, C. J.—This action was brought by respondent to recover damages on account of injuries to certain lambs while in the stockyards of appellant company at Filer. The

lambs had been originally delivered to appellant under a contract issued at Murphy, which provided for the privilege of feeding in transit and subsequent reloading and shipping to final destination. The sheep were unloaded at Filer and kept for some weeks on the ranch of respondent for feeding. They were brought by respondent from his ranch and placed in the stockyards of appellant company on the evening of December 29, 1915, with the intention of loading them on the cars when the train arrived the following morning for the purpose of forwarding to their final destination. The evidence is conflicting as to whether or not appellant company was notified that the lambs were placed in the stock-pens. They were left in the pens unattended and during the night dogs entered and killed or injured 269 of them. The action was based upon negligence.

In his complaint respondent alleged that appellant had negligently failed and neglected to keep its stockyards in which the lambs were placed properly inspected and repaired, and negligently permitted said pens to be in a state where a plank was off of one of the panels of the fence on the north side of said corral, leaving the fence at that particular point lower than the remaining portions thereof, and that in addition to the fact that said board was off, appellant has caused or permitted sand, gravel and other material used in sanding cars for livestock to be piled up next to the fence, thereby making said fence unsafe and unsuitable for receiving and protecting sheep and lambs for shipment, in that these conditions made access to the yards easy for dogs or other animals destructive to lambs and sheep. Appellant denied the allegation of negligence, and pleaded in defense the provisions of the shipping contract, which, among other agreements, contained the following: "The shipper will, at his own risk and expense, load, unload, care for, feed and water said stock until delivery of same to consignee at destination, and will furnish to go with the stock for that purpose, one or more attendants. . . . . " Appellant also alleged that respondent was negligent, in that he permitted the sheep to be abandoned in the night-time

while they were in the pens waiting to be loaded on the cars, and that any damages which resulted to respondent were caused solely by reason of the carelessness and negligence of respondent and his servant in their failure to care for the sheep while off the cars.

Judgment was rendered and entered for respondent. The appeal is from the court's order denying motion by appellant for a new trial.

Appellant makes two specifications of error. First, that the court erred in denying defendant's requested instruction directing the jury to return a verdict in its favor; second, in refusing to give defendant's requested instruction No. 3.

The first specification of error is not well taken. It was the duty of appellant to furnish suitable stockyards or pens in a reasonable state of repair and reasonably secure, whether they were to be used for the purpose of feeding, watering and resting livestock while being transported over its road or furnished for the reception of livestock which it was proposed to ship over the railroad. (*Lane v. Oregon Short Line R. R. Co., ante,* p. 37, 198 Pac. 671.)

Appellant contends that its duty was fulfilled when it furnished pens sufficiently secure to hold the sheep, and that it was under no obligation to fence against the intrusion of dogs or other animals, unless it be shown that it had knowledge that such animals were in the vicinity and likely to attempt to enter the pens and injure the sheep. In this case, however, the evidence showed that the top board on one of the panels of the fence was off, thus reducing the height of the fence at that point by about nine inches, and moreover, that immediately opposite the place where the top board was lacking sand and gravel used for the purpose of sanding cars for the shipment of livestock had been allowed to accumulate until the apex of the pile was practically level with the top of the fence and distant from it only about four feet. It is not so obvious that such a condition would not render the yards unsafe that the court can as a matter of law state that appellant was not guilty

of negligence in permitting it to exist. It was not incumbent upon respondent to prove that there were dogs in and about the village of Filer. It is a matter of common knowledge that dogs are found in every town or village. Whether or not it might reasonably have been expected that dogs roaming at will would naturally take advantage of the condition existing at that place was properly left to the jury. The jury may consider the natural and inherent propensities of such well-known animals as dogs in the vicinity of a band of sheep in determining whether or not there was negligence on the part of appellant. We think the inquiry should be as to the reasonable security of the pens in view of the well-known fact that every city and village contains dogs, some of which may attack sheep in pens if opportunity therefor is afforded, and in that respect differ from the views of the supreme court of Utah as expressed in the case of *Beckman v. Southern Pac. R. Co.,* 39 Utah, 472, 118 Pac. 118.

Appellant's requested instruction No. 3 contained a recital of the terms of the shipping contract as above set out. The instruction then continued:

"And you are further instructed that this provision of the contract was, and is, binding upon the plaintiff and established the measure of duty owing from each of the parties thereto, and the liability of the parties must be determined according to the terms of the shipping agreement. The defendant has pleaded this agreement and the undertaking of the plaintiff to be responsible for the sheep while off cars and the negligence of the plaintiff or his caretaker, as a defense, and if you shall find from the evidence that the plaintiff or his agent failed in any way to perform his obligations under the shipping contract and that such failure caused or directly contributed to the loss, it will be your duty to render a verdict in favor of the defendant."

The court instructed the jury as follows:

"If, therefore, you shall find from the evidence that the pens were so insufficient that the carrier, in the exercise

of reasonable care, should have anticipated that it was unsafe to hold the plaintiff's sheep therein, then I charge you that the plaintiff was under a similar duty to the defendant in this respect and was not only chargeable with notice of that which he or his agent actually observed, but with notice of everything that they should, in the exercise of ordinary care, have observed before leaving the sheep in the pens unattended, and if, in the exercise of ordinary care, they, as reasonable and prudent men, should have known that the pens were insufficient in the manner alleged in the complaint, then the plaintiff is not entitled to recover and it is your duty to render a verdict in favor of the defendant.''

In view of the charge given, error cannot be predicated upon the refusal of the trial court to give appellant's requested instruction No. 3. It is not to be understood that either the requested instruction or the instruction as given meets with unqualified approval. In our opinion appellant owed a positive duty to provide pens in reasonably safe condition and reasonably secure, aside from any provisions of the shipping contract. Respondent had a right to rely upon this duty having been performed. (*St. Louis & S. F. R. Co. v. Beets,* 75 Kan. 295, 89 Pac. 683, 10 L. R. A., N. S., 571. See, also, *Buck v. Oregon R. & N. Co.,* 53 Wash. 113, 101 Pac. 491.)

The shipper cannot be charged with liability for his own loss, unless his negligence is clearly shown. The obligation of the shipper to discover defects in the pens requires at most the exercise of only ordinary care. The duty of the railroad company to furnish pens reasonably secure is unqualified. (*Norfolk & W. R. Co. v. Harman,* 91 Va. 601, 50 Am. St. 855, 22 S. E. 490, 44 L. R. A. 289, and note.)

The judgment will be affirmed, with costs to respondent.

Budge, McCarthy and Dunn, JJ., concur.

Lee, J., dissents.

Petition for rehearing denied.